# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:17-cr-233 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| THOMAS D. BROWN, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of defendant Thomas D. Brown ("Brown") to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. No. 42.) Plaintiff United States of America (the "government") opposes the motion (Doc. No. 49), and Brown has filed a reply. (Doc. No. 52.) For the reasons that follow, Brown's motion to vacate is denied.

## I. BACKGROUND

On June 21, 2017, the government filed an indictment against Brown charging him with two counts of using a minor to engage in sexually explicit conduct to produce a visual depiction, in violation of 18 U.S.C. § 2251(a); one count of receiving and distributing visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2); and one count of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). (Doc. No. 8.)

The charges against Brown grew out of an investigation by task force officers of the Federal Bureau of Investigation ("FBI") into online exploitation of children. On several occasions in early May 2017, it was determined that a computer using a particular IP address

utilized the internet to download files believed to contain child pornography. After tracing the IP address to a residence owned by Theresa Roach, a search warrant was obtained for her residence. A search of the computers found in Roach's residence did not yield any child pornography. During the search, however, Roach identified Brown as her boyfriend. She advised officers that Brown had until recently lived at the residence with her and her two minor daughters and that he owned a computer. (Doc. No. 1-1 (Affidavit) ¶¶ 4–8, 10–15.)

On May 22, 2017, a search warrant was obtained and executed at the residence where Brown was residing. Officers located Brown's computer and an on scene preview of the contents revealed evidence of child pornography.[1] At the time of the search, officers informed Brown that he was not under arrest and that he did not have to speak with the agents present. (*Id.* ¶¶ 19–24; Doc. No. 42-7 (FBI Interview Form) at 1[2].) After being advised of the identity of the three interviewing agents and the nature of the interview, Brown consented to an interview in his home. (Doc. No. 42-7 at 1; *see* Doc. No. 1-1 ¶ 21.) During the interview, Brown admitted to viewing and downloading child pornography for approximately three years. He further admitted that he masturbated while watching downloaded videos, and that he had engaged in inappropriate sexual contact with Roache's minor daughters. He also told agents that he installed a "spy camera" in the girls' bathroom to record one of the girls undressing. (Doc. No. 42-7 at 1–2.)

After the interview at his home, Brown agreed to travel to the FBI's Canton Field Office for the purpose of submitting to a polygraph examination. At the FBI field office, Brown was

---

[1] A subsequent forensic examination of the computer revealed 535 videos and 2,786 images depicting child pornography.

[2] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

told that the polygraph process was voluntary; he was not under arrest and was free to end the process and leave at any time; and that the door to the polygraph room would be closed for privacy reasons only. (Doc. No. 42-8 (FBI Polygraph Examination Report) at 2.) Brown was read and signed a FD-394 "Advice of Rights" form and a FD-328 "Consent to Interview with Polygraph" form, indicating that he understood his right to refuse to submit to the polygraph. (Doc. No. 42-9 (Consent to Interview with Polygraph Form) at 1; Doc. No. 42-10 (Advice of Rights Form) at 1.) While the examiner was setting up the polygraph, Brown repeated much of the same information he shared with officers during the interview at his home, and the examiner noticed that Brown was emotional as he recounted this information. Brown also volunteered that he would cut himself, and he showed the examiner multiple cuts on his stomach. No polygraph examination ever took place, however, because Brown requested to speak with an attorney. The interview was terminated at that point and Brown was taken to the fingerprint room for processing. During the booking, Brown purposefully broke one of the lenses in his glasses and attempted to cut his throat in an effort to commit suicide. Brown was transported to the hospital where he was treated and released into FBI custody. (Doc. No. 42-8 at 4–5.)

At his arraignment on May 24, 2017, Brown was appointed counsel and entered a plea of not guilty to the charged offenses. (Minutes of Proceedings, 5/24/2017; CJA 20 Appointment of Rhonda L. Kotnik, 5/24/2017.) On July 31, 2017, Brown's attorney requested a competency evaluation, and the Court ordered a psychiatric/psychological evaluation. (Doc. No. 11 (Motion); Doc. No. 12 (Order).) Brown was evaluated by a psychologist for the Federal Bureau of Prisons and a report was prepared. (Doc. No. 15 (Report, Sealed).) The report indicated that defense counsel had expressed concerns about Brown because he was "completely distraught" during

their pretrial discussion and because Brown had attempted to harm himself when he was arrested. (*Id*. at 14.) In the report, the author diagnosed Brown with Borderline Personality Disorder, Major Depressive Disorder, and various substance abuse disorders. The author further opined that Brown understood the nature of the charges against him and the potential consequences of a guilty verdict, and that he was capable of assisting his counsel with his defense. (*Id*. at 13, 14–17.)

At the competency hearing on December 7, 2017, defense counsel stipulated to the contents of the psychological report. The Court adopted the findings in the report and determined that Brown was competent to stand trial. (Minutes of Proceedings, 12/07/2017; Doc. No. 17 (Order).) The Court set this matter for trial in early February, 2018. (*Id*.)

On January 18, 2018, Brown pled guilty to the charges in the indictment. (Minutes of Proceedings, 1/18/2018.) At the beginning of the hearing, the Court asked Brown if he was aware of any mental conditions that would in any way interfere with his ability to understand what was being discussed. He answered in the negative. His counsel agreed that she had no reason to question Brown's competency to change his plea. (Doc. No. 39 (Transcript of Change of Plea Hearing) at 7.) The Court conducted its standard Rule 11 plea colloquy with Brown before determining that his guilty plea was voluntary, intelligent, and knowingly made. As part of its plea colloquy, the Court asked Brown if he was "fully satisfied with the legal services and advice provided to [him] by his attorneys[3][.]" (*Id*. at 33.) Brown responded in the affirmative. (*Id*.) Following the plea hearing, the Court ordered the preparation of a presentence investigation report ("PSR"). (Doc. No. 22 (PSR); Doc. No. 30 (Revised PSR).)

---

[3] In addition to Attorney Kotnick, Brown was represented by a second attorney, Angelina Gingo.

Brown was sentenced on May 3, 2018. At the sentencing hearing, Brown's counsel objected to a five-level enhancement in the PSR under U.S.S.G. § 4B1.5(b)(1) for engaging in a pattern of activity involving prohibited sexual conduct. (*See* Doc. No. 22 ¶ 49.) The Court determined that the enhancement properly applied. Nevertheless, it declined to apply the enhancement, finding that it resulted in a guidelines range that was "greater than necessary to affect the purposes of sentencing." (Doc. No. 31 (Transcript of Sentencing Hearing) at 5.) Without the enhancement, the Court determined that Brown's combined offense level was 43, which was reduced to 40 following application of Brown's acceptance of responsibility. The Court then observed that Brown's criminal history, which was summarized in the PSR, produced a subtotal score of one. However, because Brown was "under a criminal justice sentence at the time he committed the offenses in this case, two points [were] added making the total criminal points three which correspond[ed] to a criminal history category of II." (*Id*. at 5–6.) The Court determined that the advisory guidelines range for an offense level of 40 and a criminal history category II was 324 to 405 months. (*Id*. at 6.)

Defense counsel urged the Court to consider a possible variance and to impose "the minimum sentence that the court can impose[,]" highlighting the fact that Brown was remorseful and that he freely cooperated with authorities. (*Id*. at 22–23.) She cited Brown's mental health issues, his drug abuse and proclivity for self-harm, and minimal criminal history as mitigating factors. (*Id*.) Brown also spoke on his own behalf at the sentencing hearing. In his allocution, he expressed how sorry he was for his actions. (*Id*. at 23.) Additionally, he noted that his "case [was] purely circumstantial[,]" that he was not a threat to anyone, and that he had engaged in drug use that negatively impacted his behavior. (*Id*. at 23–25.) He requested a "minimum

sentence so that [he could] have the opportunity to make a positive impact on the families [he had] wronged." (*Id*. at 24.)

The Court sentenced Brown to a term of imprisonment of 405 months, representing 360 months as to Counts One and Two (to be served concurrently), 240 months as to Count Three (with 45 months to be served consecutively with the sentence for Counts One and Two), and 120 months for Count 4 (to be served concurrently with the sentence imposed in Count Three). (*Id*. at 29; Doc. No. 24 (Judgement); Doc. No. 26 (Amended Judgment to Reflect Facility Recommendation).)

In arriving at its sentence, the Court began by noting that it had adjusted Brown's guidelines sentence by electing not to apply the appropriate five-level enhancement. (Doc. No. 31 at 26.) The Court also considered Brown's limited criminal history, his mental health diagnosis, and the abuse that he suffered in his childhood. (*Id*. at 26, 28.) But the Court also took into consideration the fact that he possessed a large number of child pornographic images and that two of the counts involved physical contact with children. (Doc. No. 26–27.) Additionally, the Court noted that it was troubled by some of Brown's comments and efforts to deflect responsibility as they were inconsistent with genuine remorse. (*Id*. at 27.) The Court also disagreed with Brown's representation that he did not pose a threat to others, finding that by his actions he demonstrated that he posed a serious threat to the community. (*Id*.)

Brown appealed the Court's judgment. On direct appeal, Brown argued that his plea lacked a factual basis as to the counts for sexual exploitation, that his sentence was procedurally and substantively unreasonable, and that his counsel was ineffective. (Doc. No. 40.) The United States Court of Appeals for the Sixth Circuit rejected his arguments and affirmed the Court's

judgment. (*Id.*) In its ruling, the Sixth Circuit specifically rejected Brown's argument that the Court should not have increased his criminal history by two points under U.S.S.G. § 4A1.1(d) for being under a criminal justice sentence at the time of the offense, finding that the Court "properly applied" § 4A1.1(d). (*Id.* at 4.) The Sixth Circuit also rejected Brown's arguments that this Court failed to consider relevant mitigating factors—such as his mental health issues, troubled childhood, and minimal criminal history—finding that it was clear from the record that the Court properly considered these matters. (*Id.* at 5.) It found "[l]ikewise meritless" Brown's contention that the Court placed too much emphasis on remarks made by Brown in his allocution. (*Id.*) The Sixth Circuit declined to reach Brown's ineffective assistance of counsel claims, finding that the record was not adequately developed to permit a consideration of these matters on direct appeal. (*Id.* at 5–6.)

On July 30, 2020, Brown filed, through counsel, the present motion to vacate. In his § 2255 motion, Brown alleges that he received ineffective assistance from his trial counsel. The government opposes each asserted ground for relief and insists that Brown received effective assistance from his trial counsel.

## II. STANDARD OF REVIEW

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the

sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

A petitioner who entered a guilty plea must show an error of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (2003)). A court may only grant relief under § 2255 if the petitioner demonstrates "'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* at 736 (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)). A petitioner further bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. Vague and conclusory claims which are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961).

When a defendant challenges the validity of a plea, the representations of the defendant, his lawyer, the prosecutor, and the judge "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). Such "[s]olemn declarations in open court carry a strong presumption of verity." *Id.* Indeed, "[b]ecause courts must be able to rely on a defendant's statements during a plea colloquy, 'allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible'

8

and 'patently frivolous or false.'" *Caruthers v. United States*, No. 3:07-cr-0635, 2008 WL 413631, at *5 (M.D. Tenn. Feb 12, 2008) (quoting *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005)). Therefore, "the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Posey v. United States*, No. 3:20-cv-00121, 2020 WL 2129235, at *9 (M.D. Tenn. May 5, 2020) (quoting *Lemaster,* 403 F.3d at 221–22). That is because "[t]he plea colloquy process exists in part to prevent defendants from making such claims [of misrepresentation and a lack of understanding]." *Barnett v. United States,* No. 2:10-cr-116, 2017 WL 160896, at *4 (E.D. Tenn. Jan. 13, 2017) (citing *Ramos v. Rogers*, 170 F.3d 560, 560–66 (6th Cir. 1999)). "Otherwise, a defendant could plead guilty in the hope of obtaining favorable treatment during sentencing while reserving the right to raise all manner of constitutional claims if the result of the sentencing process was not as he had hoped." *Id.* at *7.

Accordingly, "no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also Napier v. United States*, No. 93-5412, 1993 WL 406795, at *2 (6th Cir. Oct. 8, 1993) ("To be entitled to a hearing, the prisoner must set forth detailed factual allegations which, if true, would entitle him to relief under § 2255.") (citing, among authorities, *Machibroda v. United States*, 368 U.S. 487, 496, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962)); *cf. Valentine v. United States*, 488 F.3d 325, 334 (6th Cir. 2007) (finding that the burden is met where the petitioner "offers more than a mere assertion . . .

he presents a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible'"). Where (as here) the judge considering the § 2255 motion also presided over the plea and sentencing hearings, the judge may rely on his or her recollections of those proceedings. *See Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Brown grounds his claims in the Sixth Amendment right to effective assistance of counsel. While his counsel indicates repeatedly in the briefing that he is not interested in grading trial counsel's efforts, he devotes most of the briefing to explaining how he would have handled the case differently had he been appointed to represent Brown before the district court. But such an approach fails to address the deferential standard that applies on collateral review. Indeed, "[j]udicial scrutiny of counsel's performance must be highly deferential[.]" *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* Counsel's performance must be evaluated from the perspective existing at the time of the representation, not from the perspective of hindsight. *Id.*

To make out a claim of ineffective assistance, a prisoner must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and that counsel's errors were so serious as to deprive him of a fair trial. *Strickland*, 466 U.S. at 687–88; *United States v. Hanley*, 906 F.2d 1116, 1120–21 (6th Cir. 1990); *Flippins v. United States*, 808 F.2d 16, 18 (6th Cir. 1987). To prevail on a claim of ineffectiveness, a prisoner must prove: (1) that counsel's performance fell below an objective standard of reasonableness, and (2)

that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland*, 466 U.S. at 687–88; *see also Williams v. Taylor*, 529 U.S. 362, 390–91, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A criminal defendant is entitled to effective assistance of counsel during the plea and sentencing process. *See Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).

In his motion, Brown alleges that his counsel was deficient for: (1) failing to file a motion to suppress; (2) failing to adequately present Brown's mental health issues to the Court; (3) failing to object to the criminal history calculation in the PSR and neglecting to argue that the criminal history calculation over-represented Brown's criminal history; (4) advancing insufficient mitigation arguments and evidence at sentencing; and (5) failing to adequately prepare Brown for sentencing. (*See* Doc. No. 42.) The Court will address each ground in turn.

### A. Failure to File a Motion to Suppress

Brown argues that trial counsel should have tested the constitutionality of the statements he made to law enforcement at his home and in the polygraph room with a motion to suppress. According to Brown, "there existed a combination of facts demonstrating he was suffering from mental illness or otherwise under severe distress such that the confession was not willingly given under law." (*Id*. at 15.) He alleges that the record supports "a good faith [c]onstitutional argument [for] a [m]otion to [s]uppress." (*Id*. at 16.) On collateral review, however, it is not enough to argue that there was a good faith basis for bringing such a motion. Rather, "[w]here defense counsel's 'failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different

11

absent excludable evidence in order to demonstrate actual prejudice.'" *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986)); *see Robinson v. Howes*, 663 F.3d 819, 825 (6th Cir. 2011) (a court must assess the merits of the unpursued Fourth Amendment claim to determine whether counsel was constitutionally competent).

Turning to the merits, the Court finds that Brown has failed to show either that the record supports a finding that he was in custody at the time he made his statements to law enforcement or that his statements were involuntary. Accordingly, he cannot demonstrate that his motion would have been meritorious or that its resolution would have resulted in the exclusion of his statements and/or a decision to go to trial.

### 1. *In Custody*

The Fifth Amendment, as interpreted in *Miranda*, protects against un-counseled statements made during custodial interrogations in the absence of a knowing, voluntary, and intelligent waiver of the right against self-incrimination and the right to counsel. *Frazier v. Jenkins*, 770 F.3d 484, 502 (6th Cir. 2014). These protections apply to statements made during a "custodial interrogation"—i.e., during "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444; *see also United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010) (explaining that *Miranda* requirements apply "only when there has been such a restriction on a person's freedom as to render him 'in custody'"). "A suspect is 'in custody' for purposes of receiving *Miranda* protection if there has been a 'formal arrest or restraint on

12

freedom of movement.'" *Mason v. Mitchell*, 320 F.3d 604, 631 (6th Cir. 2003) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977)).

"'[T]the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.'" *Id*. (quoting *Stansbury v. Ca*., 511 U.S. 318, 323, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994)). "'[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Id*. (quoting *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984)). "The reasonable person test is appropriate because, unlike a subjective test, it does not 'place upon the police the burden of anticipating the frailties or idiosyncrasies of every person whom they question.'" *United States v. Macklin*, 900 F.2d 948, 951 (6th Cir. 1990) (quoting *Berkemer*, 468 U.S. at 442 n.35). Several factors guide the analysis, including: "(1) the location of the interview; (2) the length and manner of questioning; (3) whether there was any restraint on the individual's freedom of movement; and (4) whether the individual was told that he or she did not need to answer the questions." *Hinojosa*, 606 F.3d at 883; *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009). In the Sixth Circuit, courts must consider the totality of the circumstances surrounding the encounter, "with the ultimate inquiry turning on whether a formal arrest occurred or whether there was a restraint on freedom of movement of the degree associated with a formal arrest. *Panak*, 552 F.3d at 465 (quotation omitted). As the defendant seeking suppression, Brown would have borne the burden of proving by a preponderance of the evidence that he was subjected to a custodial interrogation. *See United States v. Lawrence*, 892 F.2d 80, 1989 WL 153161, at *5 (6th Cir. 1989).

First, it is undisputed that Brown was told before his interview in his home, and again before the interview in the polygraph room, that he was not under arrest and he was not formally arrested, he was never physically detained, such as by the use of handcuffs or even a locked door, and the officers did not brandish or display any weapons at any time during the encounter. *See, e.g., United States v. Salvo*, 133 F.3d 943, 951 (6th Cir. 1988) ("Perhaps most significantly, Agent Williamson specifically advised Salvo . . . that he was not under arrest, that he was free to leave at any time, and that he would not be arrested at the conclusion of the interview."); *id.* (noting that suspect was "never handcuffed or otherwise physically restrained, nor was he told he was under arrest or even threatened with arrest or told to 'stay put'"). Second, the number of agents—three interviewers in the home[4] and one polygraph examiner in the polygraph room— would have supported a finding that the interviews were non-custodial. *See, e.g., United States v. Ellison*, 791 F.2d 821, 823 (10th Cir. 1986) (attendance of three agents did not transform interview into custodial interrogation); *see also United States v. Conder*, 529 F. App'x 618, 619, 623 (6th Cir. 2013) (three agents during in-home interview not custodial). Third, there is no evidence that the interviews were unnecessarily lengthy or prolonged. *See, e.g., United States v. Mahan*, 190 F.3d 416, 420–22 (6th Cir. 1999) (affirming denial of motion to suppress where interview "lasted approximately an hour and thirty-five minutes").

Additionally, the locations of the interviews also support a finding of non-custodial interrogation. The initial interview took place in Brown's residence, an inherently non-coercive environment. *See United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010) ("It is significant

---

[4] In his § 2255 motion, Brown maintains that twelve or more agents participated in the search of his residence. This may be true, but it is undisputed that only three agents participated in the interview. Each interviewing agent was introduced to Brown before the interview took place, and there is no evidence that the other agents in the home interacted at all with Brown or displayed their weapons during the search.

to our inquiry that the questioning occurred at Defendant's home. This court has found that such a venue generally does not present a coercive environment.") (citing *Panak*, 552 F.3d at 466–67; *Salvo*, 133 F.3d at 950). Even the subsequent interview in the polygraph room—although perhaps "inherently intimidating," *see Salvo*, 133 F.3d at 951—was not unduly hostile or coercive. Nearly "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." *Mathiason*, 429 U.S. at 495. Indeed, the setting was no more coercive than the setting of other encounters where courts have determined the Fifth Amendment was not implicated. *See, e.g., California v. Beheler*, 463 U.S. 1121, 1122, 1125, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983) (questioning at police station); *Mathiason*, 429 U.S. at 495 (same); *Mason v. Mitchell*, 320 F.3d 631–32 (6th Cir. 2003) (interviews at sheriff's office and interrogation room in basement of city hall); *Ellison*, 791 F.2d at 823 (interview at United States Attorney's office following police escort to office).

Moreover, there was nothing coercive about the brief exchange between Brown and the polygraph examiner. After voluntarily agreeing to travel to the police station for the purpose of participating in a polygraph examination, Brown was advised that the test was voluntary, that the door would remain closed only for his privacy, and that he could terminate the process at any time. Brown then volunteered information (much of which he had already volunteered during the home interview) before electing to terminate the process, which he did before the examination ever took place. It was not until he made multiple incriminating statements that he was taken into custody.

15

Based upon the totality of circumstances, Brown has not established that he was subjected to a custodial interrogation because he has failed to point to any facts that would have dissuaded a reasonable person in Brown's shoes from believing that "he could elect to leave or terminate the interview."[5] *United States v. Protsman*, 74 F. App'x 529, 535 (6th Cir. 2003). In his reply, Brown suggests that had he been able to cross-examine the interviewing officers as part of an evidentiary hearing on a motion to suppress, the record would have reflected the meritorious nature of a motion to suppress. In essence he claims that there are no supporting facts for the very reason that trial counsel failed to file a suppression motion. (Doc. No. 52 at 2, 7.) Such a circular argument is far too vague and conclusory to support a claim for ineffective assistance of counsel. *See United States v. Cosgrove*, 637 F.3d 646, 663 (6th Cir. 2011) ("[C]onclusory assertions of ineffective assistance are not adequate."); *see also Ross v. United States*, 339 F.3d 483, 494 (6th Cir. 2003) ("An allegation entirely unsupported by the record cannot meet the prejudice component of the *Strickland* inquiry."); *Lovejoy v. United States*, No. 953968, 1996 WL 331050, at *3 (6th Cir. June 21, 1996) (Sixth Circuit acknowledges that conclusory statements are insufficient to warrant § 2255 relief).

Of course, even if Brown was not in custody, his statements would have had to be suppressed if they were the product of coercion and, therefore, involuntary. *See Macklin*, 900 F.2d at 951 ("Even if *Miranda* warnings are not required, a confession cannot be used if it is involuntary.") (collecting Supreme Court authority). "In determining whether a confession has been elicited by means that are unconstitutional, [the Court] looks to the totality of the

---

[5] In fact, as previously noted, the record establishes that Brown did terminate the interview in the polygraph room by asking to speak with an attorney. (Doc. No. 42-8 at 4–5.)

circumstances concerning whether a defendant's will was overborne in a particular case." *Mahan*, 190 F.3d at 422 (quotation marks and citation omitted). "Relevant factors may include the defendant's age, education and intelligence; whether the defendant has been informed of his constitutional rights; the length and extent of the questioning; and the use of physical punishment, such as the deprivation of food or sleep." *Id.* at 422–23; *see McCalvin v. Yukins*, 444 F.3d 713, 719 (6th Cir. 2006) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)). While the government would have borne the burden of proving voluntariness, *Mahan*, 190 F.3d at 4221 (citing *United States v. Wrice*, 954 F.2d 406, 410 (6th Cir. 1992)), once again Brown fails to point to any non-conclusory facts that would demonstrate that his motion would have been successful.[6]

Brown speculates that "[w]ith 12 government agents around [his residence during the search], an individual could very likely be 'coerced' to talk." (Doc. No. 42 at 23.) He underscores his mental health issues and the fact that he was under duress as evidence of facts demonstrating the merits of a possible motion to suppress. (*Id.* at 20.) However, "mental disability alone does not render a confession involuntary. A defendant must also prove coercion, since 'coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause . . . .'" *Macklin*, 900 F.2d at 951 (quoting *Colorado v. Connelly*, 479 U.S. 157, 107 S. Ct. 515, 522, 93 L. Ed. 2d 473 (1986)); *see*

---

[6] Again, Brown simply relies on his unsubstantiated belief that a suppression hearing would have uncovered some unknown facts that would have supported suppression. In his motion, he explains that "many things would [have been] reviewed" during a suppression hearing, including "(1) Did [Brown] knowingly and intelligently sign a Miranda waiver; (2) Was he of sufficient mental state to understand his rights in view of his mental state and mental history; (3) Did [Brown] receive[] any breaks during the interrogations; (4) Was he offered food and water; (5) Testimony regarding the aberrant behavior of cutting himself and how that related to a voluntary and knowing waiver of his rights; (6) was he permitted to call or talk with his family or attorney." (Doc. No. 42 at 22.) But these questions are not facts, and they do not advance Brown's position on collateral review.

*Murphy v. Ohio*, 551 F.3d 485, 514 (6th Cir. 2009) (noting that defendant's "low intelligence alone does not make the officers' actions in questioning him coercive"). *But see Hill v. Anderson*, 300 F.3d 679, 682 (6th Cir. 2002) ("[w]hen a suspect suffers from some mental incapacity, such as intoxication or retardation, and the incapacity is known to interrogating officers, a lesser quantum of coercion is necessary to call a confession into question") (quotation marks and citations omitted). In analyzing whether a confession was involuntary due to police coercion, the Sixth Circuit employs a test that considers whether: "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *Mahan*, 190 F.3d at 422 (citation omitted).[7]

Brown claims that "[t]he agents clearly wanted a confession from the suspect Brown. They used police techniques, but unlawful techniques to obtain the confession." (Doc. No. 42 at 18.) However, he fails to offer any evidence of these allegedly unlawful techniques, nor does he even identify what they might have been. Rather, the record is devoid of any evidence that the interviewing agents threatened Brown or promised him anything if he spoke with them, restrained him in any way, interviewed him for extended periods of time, or deprived him of food and water. To the extent Brown suggests that the interviews were coercive because the agents believed Brown was a suspect and hoped he would confess, "a custody determination does not depend on the subjective knowledge of the interrogating officers." *Salvo*, 133 F.3d at

---

[7] In *Mahan*, the Sixth Circuit looked at the totality of the circumstances in determining whether the defendant's statement was the product of police coercion. In ultimately concluding that the statement was voluntary, the court relied on the fact that the defendant was not placed under arrest or threatened with arrest, the officers never brandished a weapon or used handcuffs, the defendant was free to leave the interview, the interview lasted only one and one half hours, and no promises or threats were made. *Mahan*, 190 F.3d at 422–23.

952. Ultimately, Brown has failed to demonstrate the existence of any record evidence that supports the conclusion that Brown was subjected to police coercion that would have overborne his will and was the crucial motivating factor in his decision to offer statements. He has, therefore, failed to demonstrate that his trial counsel was ineffective for failing to file such a motion. Brown's first ground for relief is denied.

### B.  Failure to Adequately Present Brown's Mental Health Issues

The remaining grounds in Brown's § 2255 motion all relate to sentencing. First, Brown claims that his counsel failed to sufficiently present his mental health deficiencies to the Court at sentencing. Brown acknowledges that trial counsel raised the issue of Brown's mental health struggles by requesting a competency evaluation, which resulted in the preparation of a comprehensive report by a certified forensic psychologist. He further acknowledges that the PSR addressed Brown's mental and emotional health, though he complains that it devoted "only three paragraphs" to the topic. (Doc. No. 42 at 24–25; *see* Doc. No. 22 ¶¶ 67–69.) Finally, he concedes that counsel raised Brown's mental health issues in her sentencing memorandum—though he observes that the subject only received one paragraph of text—and again at sentencing. (Doc. No. 42 at 25.) Nevertheless, he claims counsel should have referenced the psychologist's report at sentencing because it "presented a much broader reveal of the individual Tom Brown than whether he is competent to stand trial." (*Id*.) He also claims that counsel should have obtained an independent psychological evaluation so that a defense witness could have offered expert testimony at sentencing. (*Id*. at 26.) Brown does not identify what evidence would have been presented through this unidentified expert witness. Still, he claims that an independent psychological evaluation could have explored more fully who Brown was as a person, his insight

and true feelings about his actions, how his mental illness impacted his decision-making, and "any propensity or prognosis for reoffending." (*Id*. at 24.)

The Sixth Circuit has consistently held that the "failure to present additional mitigating evidence that is 'merely cumulative' of that already presented does not rise to the level of a constitutional violation." *Broom v. Mitchell*, 441 F.3d 392, 410 (6th Cir. 2006) (collecting cases, including *Clark v. Mitchell*, 425 F.3d 270, 286 (6th Cir. 2005)). "[T]o establish prejudice, the new evidence that a habeas petitioner presents must differ in a substantial way—in strength and subject matter—from evidence actually presented at sentencing." *Clark*, 425 F.3d at 286 (quotation marks and citation omitted).

By Brown's own admissions, the issue of his mental health was before the Court at sentencing, and the Court acknowledged that it took this information into consideration in fashioning its sentence.[8] (Doc. No. 31 at 22 [acknowledging Brown's mental health issues]; 28 ["The Court has also considered the mitigating factors, that Mr. Brown has a minimal criminal record, and also events that occurred in his childhood and *his mental health diagnosis*."] (emphasis added).) Moreover, while defense counsel may not have specifically referenced the psychological evaluation prepared in this case at sentencing, the Court had previously reviewed the psychologist's report before making its determination as to competency and was familiar with Brown's diagnoses and prognosis. Brown's suggestion that trial counsel was ineffective for failing to more fully elaborate upon his client's mental health issues with unknown expert

---

[8] As previously noted, the Sixth Circuit recognized this fact on appeal. (*See* Doc. No. 40 at 5.)

evidence rings hollow and is insufficient on collateral review.[9] *See, e.g., Smith v. Mitchell*, 348 F.3d 177, 200–02 (6th Cir. 2003) (petitioner was not prejudiced by his counsel's failure at sentencing to present cumulative mitigation evidence, which would have included an independent psychiatric evaluation).

### C.  Failure to Challenge Criminal History Calculation

In his third ground for relief, Brown argues that counsel was ineffective for failing to object to the Court's decision to increase his criminal history score by two points, pursuant to U.S.S.G. § 4A1.1(d), because he committed the present offense while he was under a criminal justice sentence. (Doc. No. 42 at 27–29.) Brown challenged the Court's decision on direct appeal, and the Sixth Circuit determined that the "district court properly applied" § 4A1.1(d). (Doc. No. 40 at 4.) Because the Sixth Circuit determined that the Court did not err in calculating his criminal history score, Brown's counsel cannot be considered ineffective for failing to raise this meritless objection. *See Goff v. Bagley*, 601 F.3d 445, 469 (6th Cir. 2010) (counsel was not ineffective for failing to raise patently frivolous argument); *Burton v. Renico*, 391 F.3d 764, 774 (6th Cir. 2004) (the required showing of prejudice for an ineffective assistance of counsel claim cannot be made if the unasserted argument lacks merit); *United States v. Ealy*, No. 1:05-cr-58, 2007 WL 2904028, at *1 n.2 (W.D. Mich. Oct. 1, 2007) ("It is obvious, however, that an attorney has an ethical duty not to raise frivolous arguments . . . the failure to raise a frivolous

---

[9] Brown also criticizes trial counsel for her decision to stipulate to the contents of the BOP psychologist's report. (Doc. No. 42 at 26.) He fails, however, to identify any portion of the report that he believes was inaccurate or subject to objection.

argument cannot violate *Strickland* standards nor cause prejudice warranting relief.") Brown's third ground for relief is denied.[10]

### D.  Failure to Present Mitigating Sentencing Witnesses

For many of the same reasons his second ground for relief fails, Brown's claim that his attorney was ineffective for failing to offer lay mitigation witnesses falls short of meeting the *Strickland* standard. (*See* Doc. No. 42 at 29–31.) At sentencing, Brown's counsel offered numerous letters from Brown's family, appended to Brown's sentencing memorandum, that described Brown's character and his background and upbringing. (*See* Doc. No. 21-1.) While Brown suggests that "a character witness or two is appropriate and necessary in a case of this nature[,]" he fails to identify any witnesses who should have been called or to detail any testimony that they would have provided. (Doc. No. 42 at 31.) As previously observed, the failure to present additional mitigation evidence that is "merely cumulative" of that already presented does not establish prejudice. *Clark*, 425 F.3d at 286. Brown's fourth ground for relief is denied.

### E.  Failure to Prepare Brown for Sentencing

Finally, Brown insists that his counsel was ineffective for failing to adequately prepare him for allocution. (*See* Doc. No. 32 at 31–32.) Brown does not offer *any* evidence as to the preparation he did receive from counsel prior to addressing the Court at sentencing, nor does he explain what about that preparation was deficient. Instead, he relies entirely upon the result: the

---

[10] Of course, since the Court varied down five levels by declining to apply the properly calculated enhancement under § 4B1.5(b)(1), even if the increased criminal history had been calculated erroneously, Brown would be unable to show that any such error changed the sentence he ultimately received. Accordingly, Brown would still be unable to satisfy the second prong of the *Strickland* test, and his third ground for relief would have been denied for this reason.

Court's observation that some of his remarks were inconsistent with remorse and the sentence he ultimately received. Brown reliance on conclusory allegations and hindsight to second guess his counsel's competence is woefully insufficient to establish ineffective assistance. *See Ross v. United States*, 339 F.3d 483, 494 (6th Cir. 2003) (conclusory allegations that counsel failed to adequately meet with him during trial, without any record citations, failed to support a claim of ineffective assistance of counsel); *see also Galbraith v. United States*, 313 F.3d 1001, 1008–09 (7th Cir. 2002) (affirming the district court's rejection of a claim of ineffective assistance of trial counsel, where the petitioner offered only is own "naked assertions' as to his counsel's deficient performance and "present[ed] no affidavit from himself or his trial counsel supporting his version of his attorney's conduct"). Brown's fifth ground for relief is wholly unsupported and is denied.

### IV.  EVIDENTIARY HEARING

Throughout the briefing, Brown suggested without support that he cannot possibly generate the required facts to demonstrate ineffectiveness without an evidentiary hearing. (*See, e.g.*, Doc. No. 52 at 7 ("There is no way that [Brown] can show an involuntary confession without an evidentiary hearing."); *see also id*. at 2 ("[T]he topics of 'under arrest' and or 'in custody' or 'free to leave' can only be determined through an evidentiary hearing which would provide evidence [for] factual findings [from] which to make conclusions of law.").) However, it is not enough for Brown to represent that he will discover the facts he needs to support his motion to vacate if he is given a hearing. *See McSwain v. Davis*, 287 F. App'x 450, 458 (6th Cir. 2008) (A petitioner is not entitled to an evidentiary hearing if he has not alleged any facts that, if true, would entitle the petitioner to federal habeas relief).

To be sure, the burden borne by a § 2255 petitioner to obtain an evidentiary hearing is not especially onerous. *See Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003). Nonetheless, it is insufficient to merely assert in conclusory fashion that the requisite factual support, while not yet available, would likely be forthcoming at an evidentiary hearing. As the Sixth Circuit has observed, such "[c]ircular logic" would "entitle every habeas defendant to an evidentiary hearing on any issue[,]" as a petitioner could simply claim in any case that he "could not make more than bald assertions precisely because he had not had an evidentiary hearing." *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003). Brown cannot make mere conclusory allegations in hopes that something promising develops at an evidentiary hearing; rather, non-conclusory allegations (at a minimum) are required to obtain an evidentiary hearing in the first place. *See Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) (holding that an evidentiary hearing was "unnecessary" where there was "nothing in the record to indicate that [the petitioner] would be able to prove his allegations" at a hearing); *see also United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). He has failed to come forward with any non-conclusory allegations that support his grounds for relief.

Ultimately, the Court finds that an evidentiary hearing is not warranted in the present case. As set forth in detail above, the allegations offered in support of the present motion are either contradicted by the record or amount to "bald assertions and conclusory allegations" that fail to demonstrate that Brown is entitled to relief from his judgment. *See Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). His request for an evidentiary hearing is denied.

**V.  CONCLUSION**

For the foregoing reasons, Brown's motion to vacate, set aside, or correct his sentence is denied. Further, the Court certifies that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: April 18, 2022                    _____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**